NO. 13-1016 EMSL

*Criminal*

IN THE

UNITED STATES COURT OF APPEALS

FOR THE EIGHTH CIRCUIT

*UNITED STATES OF AMERICA*

*Appellee*

*v.*

*MICHAEL E. MANNING*

*Appellant*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE EASTERN DISTRICT OF MISSOURI*
*EASTERN DIVISION*

**BRIEF OF APPELLEE**

**RICHARD G. CALLAHAN**
*United States Attorney*

Tiffany Gulley Becker
*Assistant United States Attorney*
*111 S. 10th Street, Rm 20.333*
*St. Louis, Missouri 63102*

*Attorneys for Appellee*

## SUMMARY OF THE CASE AND POSITION ON ORAL ARGUMENT

Appellant/defendant Michael Manning (Manning) was charged in an indictment with receipt of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) (Count I), and possession of child pornography on a Memorex compact disk, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Count II).

Following a four-day trial, the jury found Manning guilty on both counts. The statutory maximum for the receipt count was 240 months and 120 months for the possession charge. The United States Probation Office prepared a Presentence Investigation Report that concluded that Manning's guideline range was life; however, due to the statutory mandatory maximum sentences, the maximum sentence was 360 months.

The district court sentenced Manning to 240 months on Count I and 120 months on Count II, to be served consecutively.

The Government does not believe that oral argument is necessary in this case. The issues raised can be addressed by review of the record and application of existing law. Accordingly, oral argument will not significantly aid the court in deciding this case. However, should the Court grant Manning's request for oral argument, the Government respectfully requests an equal amount of time to respond.

i

# TABLE OF CONTENTS

SUMMARY AND STATEMENT CONCERNING ORAL ARGUMENT . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ARGUMENT

    I.    THERE WAS MORE THAN SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S FINDING THAT MANNING RECEIVED AND POSSESSED CHILD PORNOGRAPHY AS CHARGED IN COUNTS I AND II OF THE INDICTMENT.. . . . . . . . . . . . . . . . . 24

    II.    THE DISTRICT COURT DID NOT PLAINLY ERR BY FAILING TO SUA SPONTE VACATE THE CONVICTION ON COUNT I OR II AS VIOLATIVE OF THE DOUBLE JEOPARDY CLAUSE WHERE THE COUNTS INVOLVED SEPARATE ACTS AND DIFFERENT MEDIA AND IMAGES.. . . . . . . . . . . . . . . . . . . . . . . 33

    III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING CHAT TRANSCRIPTS FROM MANNING'S COMPUTER INTO EVIDENCE WHERE THEY WERE STATEMENTS OF A PARTY-OPPONENT AND HIGHLY RELEVANT TO MANNING'S KNOWING RECEIPT AND POSSESSION OF CHILD PORNOGRAPHIC IMAGES AT ISSUE... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

    IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY

Appellate Case: 13-1016     Page: 3     Date Filed: 05/22/2013 Entry ID: 4038405

ADMITTING INTO EVIDENCE A MEMOREX DISK WHERE THE GOVERNMENT PROVED THAT IT WAS SEIZED FROM MANNING'S RESIDENCE, KEPT SECURED IN LAW ENFORCEMENT CUSTODY AND WAS NOT CHANGED OR ALTERED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

V.      THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY IMPOSING A 360-MONTH GUIDELINE SENTENCE WHERE MANNING (1) RECEIVED AND POSSESSED THOUSANDS OF IMAGES OF CHILD PORNOGRAPHY, INCLUDING DEPICTIONS OF INFANTS BEING ANALLY PENETRATED, (2) EXCHANGED AND CHATTED ABOUT THE IMAGES WITH OTHERS AND (3)  ENGAGED IN A PATTERN OF SEXUALLY ABUSING HIS OWN CHILD.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Appellate Case: 13-1016     Page: 4     Date Filed: 05/22/2013 Entry ID: 4038405

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                    **Page(s)**

*Blockburger v. United States*, 284 U.S. 299 (1932). . . . . . . . . . . . . . . . . . . . . . . . 34

*Gall v. United States*, 552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . 48

*United States v. Anderson*, 674 F.3d 821 (8th Cir. 2012). . . . . . . . . . . . . . . . . 24

*United States v. Barron*, 557 F.3d 866 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . 54

*United States v. Beasley*, 688 F.3d 523 (8th Cir. 2012). . . . . . . . . . . . . . . . .49, 54

*United States v. Black*, 670 F.3d 877 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Bobb*, 577 F.3d 1366 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . 36

*United States v. Brumfield*, 686 F.3d 960 (8th Cir. 2012). . . . . . . . . . . . . . . . 44, 45

*United States v. Burman*, 666 F.3d 1113 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . 35

*United States v. Burrage*, 687 F.3d 1015 (8th Cir. 2012). . . . . . . . . . . . . . . . . 39

*United States v. Coleman*, 635 F.3d 380 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . 53

*United States v. Cooke*, 675 F.3d 1153 (8th Cir. 2012). . . . . . . . . . . . . . . . . . . 43

*United States v. Davenport*, 519 F.3d 940 (9th Cir. 2008). . . . . . . . . . . . . . . . 34

*United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010). . . . . . . . . . . . . . . . . . 54, 55

*United States v. Ehle*, 640 F.3d 689 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Espinoza*, 684 F.3d 766 (8th Cir. 2012) . . . . . . . . . . . . . . . . . 24

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) . . . . . . . . . . . . . . . 48, 49

*United States v. Franik*, 687 F.3d 988 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . 48

*United States v. Halliday*, 672 F.3d 462 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . 35

*United States v. Havlik*, 710 F.3d 818 (8th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Helmel*, 769 F.2d 1306 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . 40

*United States v. Hinkeldey*, 626 F.3d 1010 (8th Cir. 2010). . . . . . . . . . . . . . . . . 38

*United States v. Huether*, 673 F.3d 789 (8th Cir. 2012). . . . . . . . . . . . . . . . 36, 38

*United States v. Huffstaler*, 571 F.3d 620 (7th Cir. 2009) . . . . . . . . . . . . . . . . . 55

*United States v. Hyer*, 498 Fed. Appx. 658 (8th Cir. 2013). . . . . . . . . . . . . . . . 53

*United States v. Irving*, 554 F.3d 64 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Johnson*, 688 F.3d 494 (8th Cir. 2012). . . . . . . . . . . . . . . . . . . 45

*United States v. Kain*, 589 F.3d 945 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Koch*, 625 F.3d 470 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Lee*, 687 F.3d 935 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Looking Cloud*, 419 F.3d 781 (8th Cir. 2005). . . . . . . . . . . . 44

*United States v. Mantanes*, 632 F.3d 372 (7th Cir. 2011) . . . . . . . . . . . . . . . . . 55

*United States v. Maulding*, 627 F.3d 285 (7th Cir. 2010) . . . . . . . . . . . . . . . . . 53

*United States v. Mesteth*, 687 F.3d 1034 (8th Cir. 2012). . . . . . . . . . . . . . . . . . 49

*United States v. Miller*, 527 F.3d 54 (3d Cir. 2008). . . . . . . . . . . . . . . 34, 35, 54

*United States v. Montgomery*, 701 F.3d 1218 (8th Cir. 2012). . . . . . . . . . . . . . 24

*Untied States v. Moya*, 690 F.3d 944 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Muhlenbruch*, 634 F.3d 987 (8th Cir. 2011). . . . . . . . . . 33-35, 55

Appellate Case: 13-1016   Page: 6   Date Filed: 05/22/2013 Entry ID: 4038405

*United States v. Munjak*, 669 F.3d 906 (8th Cir. 2012). . . . . . . . . . . . . . . . 54

*United States v. Ogeden*, 685 F.3d 600 (6th Cir. 2012). . . . . . . . . . . . . . . . . . 38

*United States v. Osei*, 679 F.3d 742 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . . 56

*United States v. Overton*, 573 F.3d 679 (9th Cir. 2009) . . . . . . . . . . . . . . . . 35

*United States v. Planck*, 493 F.3d 501 (5th Cir. 2007). . . . . . . . . . . . . . . . . . 38

*United States v. Polouizzi*, 564 F.3d 142 (2d Cir. 2009). . . . . . . . . . . . . . . . 34

*United States v. Ragland*, 555 F.3d 706 (8th Cir. 2009). . . . . . . . . . . . . . . . 24

*United States v. Regan*, 627 F.3d 1348 (10th Cir. 2010) . . . . . . . . . . . . . . . 53

*United States v. Robinson*, 617 F.3d 984 (8th Cir. 2010) . . . . . . . . . . . . . . . 45

*United States v. Schwarte*, 645 F.3d 1022 (8th Cir. 2011). . . . . . . . . . . . . . 30

*United States v. Shuler*, 598 F.3d 444 (8th Cir. 2010). . . . . . . . . . . . . . . 49, 56

*United States v. Simpson*, 152 F.3d 1241 (10th Cir. 1998). . . . . . . . . . . . . . 41

*United States v. Wallace*, 713 F.3d 422 (8th Cir. 2013). . . . . . . . . . . . . . . . 33

*United States v. Wayerski*, 624 F.3d 1342 (11th Cir. 2010) . . . . . . . . . . . . . 55

*United States v. Werlein*, 664 F.3d 1143 (8th Cir. 2011). . . . . . . . . . . . . . . . 53

*United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009) . . . . . . . . . . . . . . . . 47

*United States v. Woods*, 684 F.3d 1045 (11th Cir. 2012). . . . . . . . . . . . . . . . 34

*United States v. Yarrington*, 634 F.3d 440 (8th Cir. 2011) . . . . . . . . . . . . . 30

*United States v. Yielding*, 657 F.3d 688 (8th Cir. 2011). . . . . . . . . . . . . . . . 33

Appellate Case: 13-1016    Page: 7    Date Filed: 05/22/2013 Entry ID: 4038405

## SENTENCING GUIDELINES

**SENTENCING GUIDELINES**　　　　　　　　　　　　　　**Page(s)**

U.S.S.G. § 2G2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

U.S.S.G. § 2G2.2(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 2G2.2(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 2G2.2(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 2G2.2(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 2G2.2(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 2G2.2(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 2G2.2(b)(7(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 4B1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

U.S.S.G. § 5G1.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**FEDERAL RULES**　　　　　　　　　　　　　　　　　**Page(s)**

Title 18, United States Code, Section 2252A(a)(2) . . . . . . . . . . . . .  3, 25, 34, 37

Title 18, United States Code, Section 2252(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . 34

Title 18, United States Code, Section 2252A(a)(5)(B) . . . . . . . . . 3, 31, 34, 37, 38

Appellate Case: 13-1016　　Page: 8　　Date Filed: 05/22/2013 Entry ID: 4038405

# STATEMENT OF THE ISSUES

I.  **WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S FINDING THAT MANNING RECEIVED AND POSSESSED CHILD PORNOGRAPHY AS CHARGED IN COUNTS I AND II OF THE INDICTMENT?**

*United States v. Yarrington*, 634 F.3d 440 (8th Cir. 2011)
*United States v. Schwarte*, 645 F.3d 1022 (8th Cir. 2011)
*United States v. Kain*, 589 F.3d 945 (8th Cir. 2009)

II.  **DID THE DISTRICT COURT COMMIT PLAIN ERROR BY FAILING TO SUA SPONTE VACATE THE CONVICTION ON COUNT I OR II AS VIOLATIVE OF THE DOUBLE JEOPARDY CLAUSE WHERE THE COUNTS INVOLVED DIFFERENT ACTS, DIFFERENT DEVICES AND DIFFERENT IMAGES?**

*United States v. Muhlenbruch*, 634 F.3d 987 (8th Cir. 2011)
*United States v. Burman*, 666 F.3d 1113 (8th Cir. 2012)
*United States v. Huether*, 673 F.3d 789 (8th Cir. 2012)
*United States v. Hinkeldey*, 626 F.3d 1010 (8th Cir. 2010)

III.  **DID THE DISTRICT COURT ABUSE ITS DISCRETION BY ADMITTING CHAT TRANSCRIPTS FROM MANNING'S COMPUTER INTO EVIDENCE WHERE THEY WERE STATEMENTS OF A PARTY-OPPONENT?**

*United States v. Cooke*, 675 F.3d 1153 (8th Cir. 2012)
*United States v. Helmel*, 769 F.2d 1306 (8th Cir. 1985)
*United States v. Simpson*, 152 F.3d 1241 (10th Cir. 1998)

Appellate Case: 13-1016    Page: 9    Date Filed: 05/22/2013 Entry ID: 4038405

**IV.    DID THE DISTRICT COURT ABUSE ITS DISCRETION BY
ADMITTING THE MEMOREX DISK INTO EVIDENCE WHERE
THE GOVERNMENT PROVED THAT IT WAS SEIZED FROM
MANNING'S RESIDENCE, KEPT IN LAW ENFORCEMENT
CUSTODY AND HAD NOT BEEN CHANGED OR ALTERED?**

*United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009)
*United States v. Brumfield*, 686 F.3d 960 (8th Cir. 2012)
*United States v. Johnson*, 688 F.3d 494 (8th Cir. 2012)
*United States v. Robinson*, 617 F.3d 984 (8th Cir. 2010)

**V.    DID THE DISTRICT COURT ABUSE ITS DISCRETION BY
IMPOSING A 360-MONTH WITHIN GUIDELINE SENTENCE
WHERE MANNING (1) RECEIVED AND POSSESSED THOUSANDS
OF IMAGES OF CHILD PORNOGRAPHY, INCLUDING
DEPICTIONS OF INFANTS BEING ANALLY PENETRATED; (2)
EXCHANGED AND CHATTED ABOUT THE IMAGES WITH
OTHERS OVER THE INTERNET; AND (3) ENGAGED IN A
PATTERN SEXUALLY ABUSING HIS OWN CHILD?**

*United States v. Black*, 670 F.3d 877 (8th Cir. 2012)
*United States v. Muhlenbruch*, 634 F.3d 987 (8th Cir. 2011)
*United States v. Hyer*, 498 Fed. Appx. 658 (8th Cir. 2013)

Appellate Case: 13-1016    Page: 10    Date Filed: 05/22/2013 Entry ID: 4038405

## STATEMENT OF THE CASE

On March 14, 2012, the grand jury returned an indictment charging

Manning with receipt of child pornography in violation of Title 18, United States

Code, Section 2252A(a)(2) (Count I) and possession of child pornography on a

Memorex compact disk, in violation of Title 18, United States Code, Section

2252A(a)(5)(B) (Count II).[1]

Manning did not file pretrial motions and he waived his right to file pretrial

motions or have an evidentiary hearing. The case proceeded to jury trial on

September 4, 2012 before the Honorable Carol E. Jackson, United States District

Court Judge. After a four-day trial, the jury returned verdicts of guilty on both

Counts I and II.

The United States Probation Office prepared a Presentence Investigation

Report which concluded that Manning's total offense level was 43 (due in part to

the imposition of a five level enhancement in the offense level because Manning

engaged in a patterN of activity involving the sexual abuse of his son) and his

criminal history category was I, resulting in an advisory guideline range of life.

Because the guideline range exceeded the statutorily-authorized maximum

---

[1]Initially Count II of the indictment charged Manning with possession of
child pornography on the Western Digital hard drive. On August 31, 2012, the
district court (United States District Judge Carol E. Jackson) granted the
Government's motion to dismiss Count II and amended the indictment by
interlineation so that the original Count III became Count II.

1

Appellate Case: 13-1016    Page: 11    Date Filed: 05/22/2013 Entry ID: 4038405

sentences of 240 months (Count I) and 120 months (Count II), the report recommended that a consecutive sentence on at least one count may be necessary to achieve the total punishment. Manning raised numerous objections to the calculation of the total offense level and additionally requested a downward variance from the advisory guideline range.

The district court held a sentencing hearing on December 11, 2012. Manning raised his objections to the various guidelines enhancements, including the five-level increase resulting from Manning's sexual abuse of his son. The Government presented evidence in support of the enhancement, including a videotaped interview of Manning's son describing the abuse. With one exception, the district court overruled Manning's objections to the PSR and determined the guideline range was the statutory maximum. Manning requested a downward variance from the guideline range. Having heard the evidence at trial and sentencing, Judge Jackson sentenced Manning to the statutory maximum: 240 months on Count I and 120 months on Count II, to run consecutively. The district court also imposed a lifetime term of supervised release.

Manning timely filed the instant notice of appeal on December 20, 2012. On March 27, 2013, Manning filed his brief seeking vacation of his convictions on both Counts I and II. In the alternative, Manning seeks an order vacating his sentence as substantively unreasonable and remanding for resentencing.

2

## STATEMENT OF FACTS

Defendant Michael E. Manning was charged by way of indictment with receipt of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) (Count I), and possession of child pornography on a Memorex compact disk, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Count II). Count I charged that between on or about August 14, 2010 and on or about September 25, 2010, Manning knowingly received child pornography that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, that is, image files that had been received via the Internet which contained child pornography. Count II charged that beginning at an exact time unknown but including September 25, 2010, Manning knowingly possessed material that contained an image of child pornography that was produced using materials that traveled in interstate and foreign commerce, to wit, a Memorex compact disk. DCD 2.

The investigation into Manning's activities began on July 15, 2010. Wayne Becker, an investigator with the Dent County Sheriff's Department who has 28 years of computer training and experience and is working with the Missouri Internet Crimes Against Children's Task Force, received information from a law enforcement database that a particular Internet Protocol (IP) address was

3

associated with child pornography contained on a file sharing network.  TR,[2] 10-11, 24, 31-33.

File sharing programs and networks such as Limewire and Gnutella are referred to as "peer-to-peer" networks because there is no central server involved and members the network's computers talk to one another.  TR, 15-16.  A computer user seeking to use Limewire could simply conduct an internet search for "Limewire" and download to the program to his or her computer.  TR, 17-18.  The default location for installation on a computer is to the C: drive.  TR, 18.

Once Limewire is installed, a user would see a screen containing a list of what is in the user's library and available to share with other users.  TR, 19-20.  Once a user is part of the file sharing network, he or she can search the libraries of other members of the network and download content (music, videos, images, etc.) from the computers of other members.  TR, 20-23.

Individuals involved with the trafficking or trading of child pornography frequently use file sharing networks because there is a sense of anonymity involved as the networks do not require sign-on, passwords or registration.  TR, 28-29.  Additionally, the file-sharing networks have search functions which enable

---

[2]Although the trial and sentencing hearing in this case were transcribed in two volumes (DCD 124 and 125), they were consecutively paginated (Volume 1 contains pages 1-259 and Volume II contains pages 260-607).  Accordingly, the Government will cite all references to the transcribed materials as "TR, ___" and will not distinguish between the two volumes.

Appellate Case: 13-1016     Page: 14     Date Filed: 05/22/2013 Entry ID: 4038405

persons interested in locating child pornography to locate it through the use of search terms that are very common to child pornography files. TR, 29.

In an effort to thwart the proliferation of child pornography in these file-sharing networks, law enforcement officers have created and managed databases which enable them to search file-sharing networks to locate computers involved in this activity. TR 29-30. They can locate this material by looking for search terms consistent with child pornography ("PTCH" -which stands for preteen hard core, "R@ygold," "Lolita," "7Yo" or "8Yo" - which stand for years of age. TR, 30-31. Additionally, law enforcement is familiar with the SHA or hash algorithms which are like digital "fingerprints" unique to known child pornography images and videos and can locate child pornography files on the file sharing network that way. TR, 26-27, 30.

In this case, on July 15, 2010, Investigator Becker employed a law enforcement database that located a particular IP address (later found to be subscribed to Manning) that was in possession of suspected child pornography. TR, 32-33, 49. Specifically, the IP address had in its library 22 image and video files in its library available to share with other users of Limewire. TR, 34; Govt's Exh. 12. There were no music files present. TR, 40. Several of these files were known by their SHA or hash values to be child pornography. TR, 34. The names of several files contained conventions consistent with child pornography like:

Appellate Case: 13-1016    Page: 15    Date Filed: 05/22/2013 Entry ID: 4038405

"Preteen," "Underage PTHC," "preteen raped," "Cute little ten-year-old girl preteen boy posing naked nude sucking friend's penis young child sex;" "11YO or 10YO brothers naked nude on bed pedo young child sex;" "Sex porn gay hairless kids little child young pedo boys nude 8YO, 9YO, 10YO, 11YO, 12YO 117." TR, 38-40.

To further his investigation and gather evidence, Investigator Becker conducted a "single-source download" from Manning's IP address of the following files:

> "4'2" cute gay preteen boys 10yo, 13yo snuggled together" - an image of two juvenile males, one nude, one with his pants down;
>
> "Preteen 10yo boy sticks willie up 9yo's bum" - an image of two male juveniles, one potentially penetrating the other one from behind while the other holds his genitals
>
> "Sex porn gay hairless kids little kid young pedo boys" - an image file of a juvenile boy laying on a couch or a bed nude with his genitals exposed
>
> "PTHC 6yo boy joy bedtime rape until cum private pedo" - a video file of a three- to six-year-old female child covered from the waist up by a blanket so her genitals and bottom are exposed and depicting an adult male penis attempting to penetrate her.

TR, 46-48. Investigator Becker successfully downloaded the three image files and 80% of the video file. TR, 46-48. Investigator Becker could not tell which computer was associated with the IP address from which he made the downloads, nor whether the computer was subjected to any remote control software. TR, 67.

6

Investigator Becker then sent an investigative subpoena to Fidelity Communications, the internet service provider to the IP address to find out the identity of the IP's subscriber. TR, 48. Fidelity Communications provided information revealing that the IP address from which Investigator Becker had downloaded the child pornography was subscribed to: Michael E. Manning, username MEM659, email address mem659@fidnet.com at service address 25 Sauk Court in Sullivan, Missouri since July 13, 2010. TR, 50-51. This part of Sullivan, Missouri is in Franklin County and therefore Investigator Becker referred his investigation to the Franklin County Sheriff's Office (FCSO). TR 51-52.

FCSO Lieutenant Charles Subke, a 15-year law enforcement officer, received the referral from Investigator Becker and conducted further investigation. TR 169-72. Specifically, Lt. Subke drove by the residence at 25 Sauk Court and saw a vehicle there bearing license plates issued to Manning. Lt. Subke prepared an application and affidavit in support of a search warrant for Manning's residence on September 21, 2010. TR, 172. Lt. Subke and other officers went to the residence to execute the search warrant. They knocked on the door and Manning answered. He was the only one in the house. TR 173-75.

Lt. Subke explained to Manning that the officers had a search warrant for the residence, but that Manning was not under arrest. TR, 175. Lt. Subke then

Appellate Case: 13-1016    Page: 17    Date Filed: 05/22/2013 Entry ID: 4038405

asked whether Manning knew why the police were there. TR, 176. Manning denied knowing why they were there so Lt. Subke asked him whether he had a computer. TR, 176. The interview that ensued was conversational. Manning was sitting on the couch with his feet up and smoking. TR, 217. During the interview, Manning said he had obtained a laptop in May 2010. He knew that the operating system on his laptop was Vista and his login username was "mem659." The computer was password protected and Manning provided the password to Lt. Subke. TR, 177. Manning further stated that his internet service provider was Fidelity Internet and that his wireless network was secured and password protected. TR, 176. He told Lt. Subke that he used the computer for social networking and email. TR 181. Manning classified his computer expertise as "strong intermediate." TR, 181.

Manning admitted using Limewire peer-to-peer file sharing software to download music since May 2010. When asked about any other types of file sharing software, Manning volunteered that he had been offered a free trial of "Gigatribe," but that he did make use of the offer and denied having "Gigatribe" file sharing software on his computer. TR, 177.

Lt. Subke told Manning about the investigation that had located images associated with child pornography present on a computer using his IP address. Manning denied any knowledge of child pornography, but said that investigators

8

would find some adult pornography on his computer. TR, 178-79. Manning provided search terms that he used to find adult pornography. TR 180. When asked why a computer using his IP address would be associated with child pornography, Manning said that his friends (Kenny Green, Jr., John Barnett and Joseph Butler) could have had access to his computer. TR, 180. He never mentioned his wife, her friend or his contentious divorce. TR, 520.

While Lt. Subke interviewed Manning, other officers engaged in the search of Manning's residence and the seizure of evidence. TR, 181-82. FCSO Detective Matt Corbett photographed the scene and assisted in the search and seizure of evidence. TR, 68-70. FCSO Detective Rebecca Biermann also assisted in the search. TR, 122-23. Det. Corbett found a Dell laptop computer on a desk in the main living room. TR, 71-72, 75. Det. Biermann conducted a "soft shutdown" of the computer to prevent the loss of evidence. TR, 126. Det. Biermann located one CD on the computer desk which was not seized because it either was a commercial CD or had nothing on it. TR, 125. Later, Det. Biermann searched the desk drawers and located what she believed to be two CDs in two separate plastic jewel cases. TR, 127-28. Det. Biermann did not open the jewel cases to determine how many CD's were inside each case. TR, 128. The only disks that were visible through the plastic jewel cases were a pink Maxell disc and a TDK brand disk. TR, 76; Govt's Exh. 5, 6. Det. Corbett packaged them in their cases

9

into an envelope which he sealed. TR, 128; Govt's Exh. 3. Because the FCSO evidence custodian was not available on September 25 (a Saturday), Det. Corbett stored the laptop and the sealed envelope containing the disks in his locked office until they could be deposited in the evidence locker on September 28, 2010. TR, 115.

On October 14, 2010, Det. Biermann retrieved the laptop computer and disks from the FCSO's evidence custodian and transported them to the Regional Computer Crime Education Enforcement (RCCEEG) lab in Clayton, Missouri where she gave them to RCCEEG employee Cara Wood. TR, 129-30. Ms. Wood logs in evidence for RCCEEG and received the laptop computer and the envelope containing the disks from Det. Biermann. TR, 148-49. She opened the envelope to compare the contents inside to what was noted on the evidence sheet. TR, 150. Inside the envelope containing the disks, Ms. Wood found three disks instead of two. In addition to the Maxell and TDK brand disks which were visible through their cases, Ms. Wood located a Memorex brand disk underneath the Maxell brand disk. TR 150-151.

Because there were in fact three disks inside of the evidence envelope instead of two, Ms. Wood notified Det. Biermann and then noted on the evidence sheet that there were three disks so that everyone would be aware that there were in fact three disks and not two as initially believed. TR, 151. Manning made

10

numerous challenges to the chain of custody of the evidence and the storage of the evidence. He also attacked discrepancies between various evidence logs. TR, 96-109, 113-18, 137-40, 141-46, 152-67, 182-200.

After the evidence was received at RCCEEG, it was ultimately examined by certified forensic computer examiner and expert, Detective Steven Grimm. With regard to the Memorex disk (Govt's Exh. 4), Det. Grimm obtained documentation that Memorex CD-ROM disks have never been manufactured in Missouri. TR, 229-30. Additionally, Det. Grimm made a digital image of the data stored on the disk and examined it. TR, 230-31. The disk contained 14 video files that depicted child pornography.[3] TR, 233. Portions of three of these video files were shown to the jury (TR, 266):

> "CPTVG13bond10-11-12YOchildloverlittlecollection video.mpg" - a video file depicting a prepubescent female child in a lascivious display of her genitals and the same child blindfolded and restrained with rope and an unknown person behind her touching her genitals and chest while she is restrained (TR, 238-39; Govt's Exh. 24);
>
> "new!2005KDVPJKRBVBIBCAMHMV) - preteenboysfuckinhot.mpg" - a video file depicting a prepubescent male engaging in anal intercourse with another person (TR, 239-40; Govt's Exh. 25);
>
> "BIBCAM10YOerection boy (incredible).avi" - a video file depicting a prepubescent male child with an erection in a lascivious display of

---

[3]The parties stipulated that all of the "visual depictions that are alleged to have been received and possessed in the indictment are of actual minors." TR, 470; Govt's Exh 55.

Appellate Case: 13-1016     Page: 21     Date Filed: 05/22/2013 Entry ID: 4038405

his genitals (TR, 240-41; Govt's Exh. 26).

Additionally, Det. Grimm examined Manning's laptop computer bearing serial number 5GC5MJ1.  TR, 241-42; Govt's Exh. 2.  Manning's laptop computer contained a hard drive.  TR, 244-45; Govt's Exh. 1.  Det. Grimm employed the use of a write-blocking device to ensure that nothing was added to or deleted from the hard drive during the process of making a digital copy of the hard drive.  TR, 246-47.

Det. Grimm obtained registry software information from the hard drive. TR, 250.  The hard drive operated with Vista Home Premium Operating System which was installed on November 19, 2009, to registered owner "MEM659."  TR, 250.  The user name must be manually entered by the user of the computer.  TR, 251.  Someone last logged on to the computer at 7:13 a.m. local time on September 25, 2010 (the date of the execution of the search warrant), and the password had last been changed on April 22, 2010, at 5:03 p.m.  TR, 252-54; Govt's Exh. 30.

Manning's hard drive reflected that the Limewire file-sharing application, the Yahoo Messenger application and the Gigatribe application had each been installed. TR, 254-56, 279; Govt's Exh. 31, 32, 33.  Gigatribe is a file-sharing application that is closely coupled with a chat application.  It is different from Limewire in that with Gigatribe, each individual user will select which files they

12

would like to make available to other Gigatribe users and then typically during chat sessions, users will exchange files which are often password protected. TR, 279-80. Individuals involved in trafficking child pornography frequently use Gigatribe because they are able to vet or verify whether someone has an interest in obtaining illegal files before granting access to that material. TR, 280.

Det. Grimm located a path on Manning's computer where Gigatribe downloads were stored, "C:\users\MEM659\documents\gigatribedownloads\ boost_virgin." TR, 281. The term "boost_virgin" in this context indicates that there was a user profile of the same name being used on Gigatribe on the computer. TR, 282.

During his examination of Manning's computer, Det. Grimm located 1,029 images and 49 video files, all depicting child pornography. TR, 287. The jury was shown a small representative sample of the materials including the following images located in the users folder associated with MEM659 within the Gigatribe downloads\boost_virgin folder:

-"jamie4.jpg" - an image file located depicting a juvenile male with an erect penis (TR, 288; Govt's Exh. 36);

-"blasen3.jpg"- an image file depicting a child performing oral sex on a male (TR, 288; Govt's Exh. 37);

-"dad son 11763.jpg" - an image file depicting an adult male performing oral sex on a prepubescent male child (TR, 289; Govt's Exh. 38);

13

-"yng boy suck.jpg" - an image file depicting a prepubescent male performing oral sex on an adult male (TR, 289; Govt's Exh. 39);

-"4mo_WILLOW?1.jpg" - an image file depicting an infant child performing oral sex on an adult male (TR, 290; Govt's Exh. 40);

-"qqaazz pthc pedo dad fucks 2yo boy 03.jpg - an image file depicting an adult male having anal intercourse with a prepubescent male child (TR, 291; Govt's Exh. 41).

Additionally, out of the 49 video files, the jury saw portions of the

following which were located in the users folder associated with MEM659 within

the Gigatribe downloads boost_virgin folder:

-"Education-Daphney(9YO)Demonstrating Child Pedo Outercourse Sex With Dad-pthc.avi" - a video file depicting a prepubescent female having vaginal intercourse with an adult male (TR, 292-93; Govt's Exh. 41);

-"7yogir.mpg" - a video file depicting a prepubescent female child being anally penetrated by an adult male (TR, 294; Govt's Exh. 43);

-"!3month baby1.avi" - a video file depicting an infant laying in a supine position and a hand touching the infant's genital area, then an adult male posed with his penis near the infant's genitals and subsequently the penis is inserted into the infant's genital area and then the infant was repositioned so the infant's mouth is accessible to the adult male's penis (TR, 296; Govt's Exh. 44)

-"11yoBoy&HisDog.wmv" - a video file depicting a prepubescent male urinating into a bucket and then a dog licking the anal area of the prepubescent male (TR, 296-97, Govt's Exh. 45);

-"child from his hands tied to the ankles fucked by man.wmv" - a video file depicting the lascivious display of a prepubescent male's erect penis who is handcuffed at the ankles and wrists, then a male enters and manually masturbates the child and then applies lubrication to the child's anal area and inserts his finger into the child's anus and then repositions the child on his knees and penetrates the child anally with his finger and then with a phallic device (TR, 297-98; Govt's

14

Exh. 46);

-"Grandpa and his Little Grandson.avi" - a video file depicting an adult male performing oral sex on a prepubescent male child and then the child touching the adult male's penis and placing his mouth on the adult male's penis (TR, 298-99; Govt's Exh. 47).

Det. Grimm was able to determine that child pornography files had been played on

Manning's computer as recently as the day prior to the execution of the search

warrant, September 24, 2010. TR, 299-301. The recently played videos included:

-"3 Yr Old Oceane With Daddy.wmv," - a video file depicting a female prepubescent child sitting on an adult male's lap with his erect penis pressed to the child's genital area. The adult spreads the child's buttocks and touches her vagina and his penis repeatedly touches the child's anal area (TR, 302-03; Govt's Exh. 49); and,

-""0.5Yo-Boy-Bayhee-04 4m03S.wmv" - a video file depicting a prepubescent male child in a lascivious display of his genitals and a hand masturbating the child's penis followed by the child being repositioned with an adult male penis positioned near the child's anus (TR, 303-04; Govt's Exh. 50).

    In addition to the video files and images recovered from Manning's

computer, Det. Grimm located archived Gigatribe chats involving a user named

"boost_virgin" and Yahoo! Messenger chats involving a user named "mem659."

TR, 309, 319-60, 360-74; Govt's Exhs. 52A-P and 53A-D. The chats introduced

at trial involved: the trading, exchanging and accessing of child pornography

videos and images (TR, 322-25, 357); discussions wherein the participants appear

to be vetting one another to ensure that they are not members of law enforcement

and are therefore safe to grant access to their child pornography collections (TR,

329-33, 336, 340, 353); types and amounts of child pornography files in the participants' libraries and their content (TR, 324, 338-39, 342-43, 349-50); sexual interests and age preferences (TR, 325-26, 330-33).

Additionally, some of the chats involve identifying information related to "boost_virgin" and "mem659" which demonstrate that those usernames were employed by Manning. TR, 330-31. For example, "boost_virgin" said that he was "31," in "MO," "5'8"" (height) and "6 ½ cut" (circumcised penis length). TR, 336. In another chat, "boost_virgin" said he was from "MO" and is "31" (years old) and commented on the Michael Devlin case, indicating that, "Both kids were about 50 miles or less from me." TR, 330-31. In other chats, "boost_virgin" said he had two boys that are six and ten (years old). TR, 332, 335, 336.

In addition to the Gigatribe chats involving "boost_virgin," Manning's admitted username, "mem659," was a participant in the Yahoo! Messenger chats. In these chats, "mem659" provided similar personal information consistent with Manning. TR, 363-64. Throughout the chats, Manning, employing usernames "boost_virgin" and "mem659," discussed his sexual interest in young children.[4]

Additionally, the chats and accompanying file transfers demonstrated that

---

[4]The district court granted Manning's motion in limine to exclude the portions of the chats where Manning discussed the sexual abuse of his own children. TR, 7. Accordingly, those portions of the chats were redacted from the exhibits presented to the jury.

16

Manning was actively engaged in sending and receiving child pornography.

Det. Grimm generated a 34-page report of Manning's computer's Explorer History which tracked files accessed over time through Windows Explorer and noted many of the files were likely child pornography based on the names of the files. TR, 374-78; Govt's Exh. 51. Some of these files were "last visited" by the computer user at different dates and times throughout August and September 2010. TR, 377. Det. Grimm also generated a 47-page report of the file creation times and relevant chats, images and videos involving child pornography. TR, 381, 390; Govt's Exh. 54. The report demonstrated that this activity occurred at various time on dates including: May 7, 2010; July 15, 18, 27 and 28, 2010; August 3, 4, 5, 13, 14, 17, 22, 24, 25 and 29, 2010; September 11 and 18, 2010. TR, 382-90.

On cross-examination, defense counsel asked Det. Grimm about malicious remote access programs. TR, 447. Det. Grimm found no evidence of the operation of a malicious remote access program. Additionally, the computer had antivirus software installed and functioning. TR, 458.

Manning was the only witness for the defense. He testified that the desk at which the laptop and disks were found in his residence had belonged to him and his estranged wife, Sara Manning, while they lived together and that Sara was the primary user of the desk. TR, 472-73. Sara has a high school diploma and worked

Appellate Case: 13-1016     Page: 27     Date Filed: 05/22/2013 Entry ID: 4038405

at a floral shop.  TR, 532.  During the marriage, Manning stated that Sara had met a friend, Jim Traxler, through the Cub Scouts around September 2006.  Sara spent time with Traxler, traveling out of town for a Cub Scout function on at least one occasion.  TR, 478-79.  Manning asserted that Traxler told Manning that he had spent 20 years in government intelligence, however Manning later conceded that Traxler was then disabled and unemployed.  TR, 477, 526. Manning filed for divorce in the fall of 2009.  TR, 280.

Manning testified that he purchased the laptop computer on ebay in April 2010 set up the username "mem659" and password "ESCO2659" which he claimed was the same username and password he used on the computer when he still lived with Sara.  Upon moving to his residence in May 2010, Manning testified that all of the furniture except the desk had been taken by Sara.  TR, 484.  Despite it being the only thing left behind, Manning asserted that he never opened any of the drawers.  TR 485, 503.

Manning stated that he suspected that Sara had accessed his residence without his permission on May 7, 2011 and May 19, 2011, approximately eight months after the execution of the search warrant.  TR, 485-89.  Manning admitted that despite being charged with child pornography crimes, he never informed police that Sara Manning or Jim Traxler may have had access to his computer.  TR, 498.  Manning denied being a participant in any of the chats admitted at trial

18

or receiving or possessing any child pornography.  TR, 495-96.

On September 7, 2012, the jury found Manning guilty of Counts I and II and unanimously found that he received or possessed each of the images listed on the verdict form.  DCD 79.

The Presentence Investigation Report (PSR) concluded that Manning's total offense level was 43[5] and his criminal history category was I.  Under the sentencing table, the resultant range would be life imprisonment, however, due to the statutory maximum sentences on Counts I and II, the advisory guidelines range became 20 years on Count I and 10 years on Count II.  Pursuant to U.S.S.G. § 5G1.2(d), a consecutive sentence on Count II was necessary to achieve the total punishment.  PSR, ¶ 69.

Manning raised numerous objections to the PSR including several of the enhancements in the offense level resulting from specific offense characteristics.

_____

[5]Manning's base offense level was 22 pursuant to U.S.S.G. § 2G2.2(a)(2). Two levels were added pursuant to §2G2.2(b)(2) because the material involved a prepubescent minor; five levels were added pursuant to § 2G2.2(b)(3)(B) because the offense involved distribution for the receipt of a thing of value, but not for pecuniary gain; four levels were added pursuant to § 2G2.2(b)(4) because the material portrayed sadistic or masochistic conduct; five levels were added pursuant to § 2G21.2(b)(5) because Manning engaged in a pattern fo activity involving the sexual abuse or exploitation of a minor; two levels were added pursuant to § 2G2.2(b)(6) because the offense involved the use of a computer for the receipt or distribution of the material or for accessing with the intent to view the material; five levels were added pursuant to § 2G2.2(b)(7D) because the offense involved more than 600 images; and two levels were added pursuant to § 3C1.1 because Manning willfully obstructed justice during his trial testimony.

19

DCD 87. The Government filed a written response. DCD 87. At the December 11, 2012 sentencing hearing, the Government relied on evidence presented at trial and called one witness, forensic interviewer Pamela Musgrave from the Children's Advocacy Center in East Central Missouri. TR, 556-57. Ms. Musgrave testified that on May 3, 2011, she conducted a videotaped interview of Manning's youngest son during which he stated that Manning had touched his privates with his hand and mouth on more than one occasion. TR, 560-61. A portion of the videotaped interview was played for the district court. TR, 563. Additionally, the Government presented unredacted versions of chats from Manning's computer that had been redacted for trial. These unredacted chats involved Manning discussing the sexual abuse of his son. TR, 567-77.

With one exception unrelated to the calculation of the criminal history category, the district court overruled Manning's objections to the PSR. TR, 577, 581, 587. Accordingly, the calculated guideline range was life; however, due to the statutory maximums, the recommended guideline range became the statutory maximum. TR, 598-99.

The district court sentenced Manning to a term of 240 months on Count I and 120 months on Count II, the term of imprisonment on Count II to run consecutively to that on Count I for an aggregate term of imprisonment of 360 months. TR, 599. The district court also imposed a life term of supervised release

20

and a $200 special assessment.  TR, 599, 603.

On December 20, 2012, Manning filed a timely notice of appeal.  DCD 104.

Appellate Case: 13-1016    Page: 31    Date Filed: 05/22/2013 Entry ID: 4038405

# SUMMARY OF ARGUMENT

First, the evidence in this case was more than sufficient to support the jury's verdicts that Manning was guilty of knowingly receiving and possessing child pornography. The child pornography was found on a disk and a password protected computer in Manning's residence in which he lived alone and was present. Manning's defense that his wife and her friend employed remote access software to put the child pornography on the computer was not credible in light of the numerous dates and times child pornography activity occurred on the computer and the content of chats found on the computer.

Second, the district court did not plainly err by failing to sua sponte dismiss one of the counts as violative of the double jeopardy clause. While possession of child pornography can be a lesser-included offense of receiving child pornography, that is not the case here where each count alleged separate conduct, devices and images.

Third, the district court did not abuse its discretion by admitting chat transcripts found on Manning's computer where the Government established that Manning was a participant in the chats and therefore they were statements of a party-opponent and were highly relevant to Manning's knowing receipt and possession of child pornography.

Fourth, the district court did not abuse its discretion in admitting the

Appellate Case: 13-1016     Page: 32     Date Filed: 05/22/2013 Entry ID: 4038405

Memorex disk into evidence over Manning's chain of custody objection where the Government demonstrated that the disk was seized from Manning's residence, kept in law enforcement custody and not changed or altered prior to its presentation at trial.

Fifth and finally, the district court did not err in rejecting the child pornography sentencing guidelines for lacking an empirical foundation, especially where Manning failed to raise the argument at sentencing. The district court considered all relevant factors and did not make an error in judgment or abuse its discretion in imposing the sentence.

# ARGUMENT

I. **THERE WAS MORE THAN SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S FINDING THAT MANNING RECEIVED AND POSSESSED CHILD PORNOGRAPHY AS CHARGED IN COUNTS I AND II OF THE INDICTMENT.**

## A. *Standard of Review*

This Court reviews challenges to the sufficiency of the evidence de novo. *United States v. Montgomery*, 701 F.3d 1218, 1221 (8th Cir. 2012). "We review a challenge to the sufficiency of the evidence deferentially." *United States v. Anderson*, 674 F.3d 821, 828 (8th Cir. 2012). This Court views "the evidence most favorably to the jury verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences." *United States v. Lee*, 687 F.3d 935, 940 (8th Cir. 2012). "[I]t is axiomatic that we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury." *Id.* (quoting *United States v. Ragland*, 555 F.3d 706, 715 (8th Cir. 2009)). "A conviction may be based on circumstantial as well as direct evidence." *United States v. Espinoza*, 684 F.3d 766, 776 (8th Cir. 2012).

This Court "must uphold the verdict if a reasonable-minded jury could find guilt beyond a reasonable doubt, even if the evidence does not exclude all other possibilities." *Untied States v. Moya*, 690 F.3d 944, 949 (8th Cir. 2012) (internal quotations omitted).

Appellate Case: 13-1016     Page: 34     Date Filed: 05/22/2013 Entry ID: 4038405

### B. Analysis

Manning contends that the Government failed to present sufficient evidence to show his knowing receipt and possession of child pornography. As demonstrated in the statement of facts and summarized below, the Government presented overwhelming evidence to support the jury's guilty verdicts as to both crimes.

### 1. The Evidence Was More Than Sufficient to Prove That Manning Knowingly Received Child Pornography

Manning was convicted of Count I, knowing receipt of child pornography. Title 18, United States Code, Section 2252A(a)(2) provides in pertinent part, as follows:

> (a) Any person who - -
> (2) knowingly receives...
> (A)  any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in...interstate or foreign commerce by any means, including by computer...
> shall be guilty of an offense.

The Government presented copious evidence that Manning knowingly received child pornography that had been transported using a means of interstate and foreign commerce, namely the Internet.[6]

There is no dispute that Government demonstrated that the image and video

---

[6]"The Internet is an instrumentality and channel of interstate commerce." *United States v. Havlik*, 710 F.3d 818, 824 (8th Cir. 2013).

25

files found on Manning's computer had been downloaded from the Internet during the period of time charged in the indictment. TR, . Additionally, the parties stipulated that the image and video files charged in the indictment involved actual children. TR, 541; Govt's Exh. 55. There is no doubt that the image and video files shown to the jury depicted these actual children, some of whom were infants, engaged in sexually explicit activity, including bestiality, anal intercourse, vaginal intercourse, oral sex and bondage.

Manning only attacks the sufficiency of the evidence of his knowing receipt of the child pornography. The Government presented ample proof of Manning's knowledge to support the jury's verdict. First, the investigation into Manning's activities began because law enforcement databases identified that an IP address subscribed to Manning's residence (where he lived alone) was offering child pornography for sharing via Limewire. TR, 34. Manning later admitted to Det. Subke that he owned a computer, used a secure wireless network and used Limewire. Manning further admitted employing a username on the computer of "mem659" which was used on Manning's computer in connection with Yahoo! Messenger chats to make comments like, "this is mike," "im in mo," "31, 5'9" 200lbs," all of which are consistent with Manning. TR, 363-64, ; Govt's Exh 53A. In response to inquiries like, "how can those boys take big man cocks like that," mem659 responded, "I'm sure it takes time" "and a lot of crying too."

26

Additionally, when asked about "how young u like," mem659 responded "best age for me is like 8-12" "but I like to look at all." TR, 369; Govt's Exh 53A. Additionally, when asked by another user if he wanted to "share a 3 yr boy together," mem659 responded "sure," and upon the suggestion "find a little cute boy in the park, wearing only his little shorts," mem659 said "take him home with us." Govt's Exh. 53C.

In the Gigatribe chats of "boost_virgin" found on Manning's computer, he also demonstrated his proclivities and sexual interests in children. In response to another individual's comment on "boost_virgin's" materials offered for sharing, "see ur into babies bro," "boost_virgin" responded "not much limits here" "no blood shit or piss." In another chat, "boost_virgin" reveals more of his sexual interest in children:

| UncleMike: | saw some 10 yo at target and fucking had to run home and start jerking |
|---|---|
| boost_virgin: | hell ya |
| | what was he wearing |
| UncleMike: | one of those t-shirt and saggy jeans but get this - the t-shirt was slit under the arms down like almost to the hem - he was playing a video and you could see his whole torso flexing as he played |
| boost_virgin: | fucking incredible nips and all |
| | hot dude |
| UncleMike: | I wanted his dad to see my lusting, take me home and we both fuck him |
| | but that didn't happen |
| boost_virgin: | hell ya that would be fucking unbeleaveable |
| | that would be too hot |

27

|                | wish I could go someplace and know that was cool |
| UncleMike:     | man, you got awesome pics |
|                | we've got the same taste |
|                | wll, i'm 45, I ould be your uncle. |
| boost_virgin   | what's the password on your locked file |
|                | and thanks I collect everything |
|                | young that is hehehehehe |

In reference to collecting child pornography and trading, "mem659" made several representations about his collection, and when asked where he had obtained his material, responded "over the years on giga, here on yahoo, and limewire." TR, 367; Govt's Exh. 53A. According to Det. Grimm's testimony, those programs were the source of the child pornography found on Manning's computer.

Additionally, portions of the Yahoo! Messenger chats reflect the exchanging of files between mem659 and other users. For example:

| mem659:        | I mainly trade |
| cormagnon1836: | what u have to send? |
| mem659:        | what do u want? what do u have |
| cormagnon1836: | pics & fids on yhis end |

This exchange was followed by a series of file transfer invitations and file transfers between the two parties, including one file entitled "willing teen with feet up REV.JPG. Govt's Exh. 53, p. 5.

The Gigatribe chats also repeatedly refer to trading child pornography images and provide identifiers consistent with defendant Manning. Although

28

specifically discussing Gigatribe with Lt. Subke during the execution of the search warrant, Manning denied use of the program, likely attempting to thwart their discovery of the chats he engaged in and child pornography he downloaded using that program.

Although Manning denied his participation in these chats as well as any involvement in child pornography, his story was incredible. Manning testified that his wife and her friend had access to his home and thus his computer, insinuating that they were responsible for the chats and the child pornography. His defense team also advanced the theory that the wife and her friend could have accomplished this through the use of malicious remote access software. This theory and Manning's story are highly implausible if not patently absurd in light of the evidence in the case.

At the time of the execution of the search warrant, when asked who could have had access to his computer or been responsible for the child pornography, Manning did not talk about his wife or her friend or the Manning's contentious divorce proceedings, instead casting suspicion on three of his friends. Additionally, the child pornography related chats as well as the creation and viewing dates and times of the child pornography images on Manning's computer spanned five months. The activity occurred on numerous occasions and at varying times of day for lengthy periods of time. Moreover, the investigation into

29

Manning's activities was triggered by notification from a law enforcement computer program searching for known child pornography on file sharing networks. The investigators only had an IP address initially, not Manning's identity. If Manning's wife and her friend were framing him, would they not have called in a tip to law enforcement so that he would be caught?

The evidence presented more than supports the jury's finding that Manning knowingly received child pornography from the Internet using his laptop computer. *See United States v. Yarrington*, 634 F.3d 440, 450 (8th Cir. 2011) (finding sufficient evidence and rejecting defendant's credibility attacks in a child pornography possession case where Government showed defendant's hard drive contained 168 images of child pornography in five separate locations and contained non-pornographic images of the defendant, his family and his property). The jury clearly rejected the Manning's testimony as well as the theory that his wife and her friend employed remote access software to conduct the child pornography activities on Manning's computer. The jury's conclusion was more than reasonable in light of the evidence. "If there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt, then [this Court] must uphold the verdict." *United States v. Schwarte*, 645 F.3d 1022, 1029 (8th Cir. 2011) (internal quotations omitted). Here the evidence warrants affirming the conviction on Count I.

30

### 2. The Evidence Was More Than Sufficient to Prove That Manning Knowingly Possessed the Memorex Disk Containing Child Pornography

The jury also convicted Manning of Count II, possession of child pornography. Title 18, United States Code, Section 2252A(a)(5)(B) reads, in pertinent part, as follows:

> (a)     Any person who –
>
> (5)(B) knowingly possesses ... any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography...that was produced using materials that have been mailed, or shipped or transported in ... interstate or foreign commerce by any means, including by computer...
>
> shall be guilty of an offense.

*See also United States v. Kain*, 589 F.3d 945, 947 (8th Cir. 2009).

Again, the Government presented overwhelming evidence of Manning's knowing possession of the child pornography of the Memorex disk.  As a preliminary matter, the Government proved that no Memorex disks have been manufactured in Missouri.  Therefore to be found in Missouri, the disk had to have traveled in interstate or foreign commerce.  TR, 229-30; Govt's Exh 22.  Second, Manning does not even attempt to contest that the disk contained visual depictions of child pornography.  Det. Grimm testified to finding 14 video files of child pornography on the disk and the jury saw portions of three of them which included a prepubescent female blindfolded and restrained with rope while her genitals

31

were being touched by another person and a prepubescent male engaged in anal intercourse.   TR, 238-40; Govt's Exh. 24 and 25.

Again, the only issue Manning raises is whether he knowingly possessed the disk and whether he knew that the visual depictions on the disk were of minors engaging in sexually explicit conduct. The Government proved beyond a reasonable doubt that he did.  The Memorex disk was seized from Manning's home where he lived alone, in a desk where his computer was powered on when police arrived to execute a search warrant.  TR, 72.  The location of the disk is also probative.  It was concealed beneath another disk, likely due to the illegal nature of its contents.

Manning testified that his wife had removed all of the furniture from the home, save the desk.  Manning unbelievably claimed that he never opened the drawers or saw their contents.  Despite the fact that Manning's computer was active and he was present and being interviewed while officers were seizing items from the desk, at no time did Manning tell the officers that the items were not his.

Furthermore, all of the evidence on Manning's laptop computer described above that shows Manning's knowledge regarding the receipt of child pornography is equally probative of his knowing possession of the child pornography on the disk.

Again, the jury was reasonable in concluding that Manning knowingly

possessed the child pornography on the Memorex disk found in his desk, in his residence at which he lived alone. Accordingly, the verdict should be upheld.

## II. THE DISTRICT COURT DID NOT PLAINLY ERR BY FAILING TO SUA SPONTE VACATE THE CONVICTION ON COUNT I OR II AS VIOLATIVE OF THE DOUBLE JEOPARDY CLAUSE WHERE THE COUNTS INVOLVED SEPARATE ACTS AND DIFFERENT MEDIA AND IMAGES.

### A. Standard of Review

Because Manning did not raise the double jeopardy issue in the district court, this Court reviews his claim for plain error. *United States v. Muhlenbruch*, 634 F.3d 987, 1002 (8th Cir. 2011). To establish plain error, there must be "(1) an error; (2) that is plain; and (3) that affects substantial rights." *Id.* at 1002 (internal quotation omitted). Reversal is only warranted where the defendant can show that the "district court committed a clear and obvious error that affected both his substantial rights and the fairness, integrity, or public reputation of the judicial process. *United States v. Wallace*, 713 F.3d 422, 427 (8th Cir. 2013). To make this showing, a defendant is generally required to show "a reasonable probability that the outcome would have been different absent the alleged error." *United States v. Yielding*, 657 F.3d 688, 707-08 (8th Cir. 2011).

### B. Analysis

#### 1. Double Jeopardy Defined

The Double Jeopardy Clause of the Fifth Amendment prevents the

33

"imposition of '[m]ultiple punishments for the same criminal offense.'"

*Muhlenbruch*, 634 F.3d at 1002.  To establish a violation, Manning "must show that he was convicted of two offenses that are 'in law and fact the same offense.'" *Id.*  "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

### 2.    Possession of Child Pornography is a Lesser-Included Offense of Receipt of Child Pornography

This Court has held that the crime of possessing child pornography in violation of 18 U.S.C. §2252(a)(4)(B) is a lesser-included offense of receiving child pornography under 18 U.S.C. §2252(a)(2).  *Muhlenbruch*, 634 F.3d at 1003. Other circuit courts of appeals have held the same with respect to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), the statutes charged in this case. *See United States v. Woods*, 684 F.3d 1045, 1060-61 (11th Cir. 2012); *United States v. Polouizzi*, 564 F.3d 142, 158-59 (2d Cir. 2009); *United States v. Miller*, 527 F.3d 54, 71-72 (3d Cir. 2008);  *United States v. Davenport*, 519 F.3d 940, 943-948 (9th Cir. 2008).

However, to constitute double jeopardy, the receipt charge and the lesser-

Appellate Case: 13-1016    Page: 44    Date Filed: 05/22/2013 Entry ID: 4038405

included possession charge must be based on the ***"same act or transaction."*** *Muhlenbruch*, 634 F.3d at 1003-04(ordering the district court to vacate one of the convictions because the Government conceded that they were based on the same pornographic images) (internal citation omitted) (emphasis added); *see also United States v. Ehle*, 640 F.3d 689, 698 (6th Cir. 2011) (holding that a violation of the Double Jeopardy Clause arises when the defendant is convicted of receiving and possessing the same child pornographic images);  *United States v. Miller*, 527 F.3d 54, 71-74 (3d Cir. 2008) (same).

### 3. Manning's Double Jeopardy Claim Fails Because Different Act and Images are the Basis of the Receipt and Possession Charges

Where the receipt and possession charges are based on separate acts and child pornographic images, no violation of double jeopardy occurs.  *See United States v. Burman*, 666 F.3d 1113, 1117 (8th Cir. 2012) ("Possession is generally a lesser-included offense of receipt; however, in this case, the superceding indictment does not indicate that the receipt and possession counts are based on the same facts and images."); *see also United States v. Overton*, 573 F.3d 679, 697 (9th Cir. 2009) (no double jeopardy where the receipt charge was based on images downloaded from the internet and the possession charge was based on images defendant took himself); *United States v. Halliday*, 672 F.3d 462, 470-71 (7th Cir. 2012) ("Where separate images form the bases for separate receipt and possession

35

counts, there can be no double jeopardy violation."); *United States v. Irving*, 554 F.3d 64, 77-79 (2d Cir. 2009) (stating that no double jeopardy violation would result where the possession count was based on an image that did was not the basis of the receipt count); *see also United States v. Bobb*, 577 F.3d 1366, 1375 (11th Cir. 2009) (affirming possession and receipt convictions which were based on two offenses occurring on different dates).

The indictment here specifically spells out the different acts alleged, different time periods and different images. Count I alleges that between on or about August 14, 2010 and September 25, 2010, Manning knowingly received child pornography using a computer via the Internet and specifies two video files. Count II alleges that beginning at a time unknown but including September 25, 2010, Manning knowingly possessed child pornography, not on a computer, but on a Memorex compact disk, and specifies two different video files. As alleged these are two separate acts charging two distinct crimes.

In *United States v. Huether*, 673 F.3d 789, 798 (8th Cir. 2012), this Court held that "[w]hile the government is not prohibited from charging [the defendant] with both a greater and lesser offense, the jury must be instructed that they cannot convict him for both offenses based on the same facts." Thus, the jury must know to separate the evidence for each count. *Id.* Further, it must be clear that the jury did not use overlapping evidence to convict for the separate counts of possession

36

and receipt.  *Id.*

Here, both the indictment and the jury verdict forms specifically listed separate pornographic images for which Manning was charged in for Count I versus those for Count II.  The verdict form for Count I (receipt of pornography under 18 U.S.C. 2252A(a)(5)(B)) specifically asked the jury "which of the following images do you unanimously find were child pornography received by the defendant?"  TR, 547; DCD 79. The jury then checked fourteen different child pornography images received by Manning on his hard drive.[7]  *Id.*  The verdict form for Count II (possession of pornography  under 18 U.S.C. 2252A(a)(2)) asked the jury to "check the following images if they unanimously find were child pornography possessed by the defendant."  *Id.*  The jury then checked three boxes representing three video clips Manning possessed on the Memorex disk.[8]  *Id.* None of these videos was listed in conjunction with Count I.

Manning's double jeopardy claim also fails because just as separate acts and

---

[7] The jury checked the following: [list of fourteen image filenames redacted]. TR, 547; DCD 79.

[8] The jury checked the following boxes: [list of three video filenames redacted]. TR, 547-48.

Appellate Case: 13-1016    Page: 47    Date Filed: 05/22/2013 Entry ID: 4038405

image files were the basis of each charge, separate media were involved in the receipt and possession charges. The receipt offense clearly involved videos downloaded from the Internet found on the laptop computer. The possession charged clearly involved videos Manning possessed on the Memorex disk. Under these circumstances, any risk of convicting Manning "of receiving the same images that he was also found to have possessed" is alleviated. *Huether*, 673 F.3d at 798; *see also United States v. Ogeden*, 685 F.3d 600, 603 (6th Cir. 2012) (no double jeopardy where defendant was charged with possessing a Maxtor hard drive and receiving child pornography "by means of a computer" because "the possession [offense] was undertaken by transfer to a different medium than the one which [defendant] received the explicit images").

In *United States v. Hinkeldey*, 626 F.3d 1010 (8th Cir. 2010), this Court rejected a double jeopardy challenge to a defendant's convictions on multiple counts of possession of child pornography. The *Hinkeldey* court held that "2252(a)(5)(B) allows separate convictions for illegal images stored on different devices." *Id*. Further, "as long as the prohibited images were obtained through the result of different transactions, the statute permits a separate count for each type of material or media possessed." *Id.* (citing *United States v. Planck*, 493 F.3d 501, 504 (5th Cir. 2007)).

Manning's receipt and possession convictions represent his separate acts

38

involving different images and media. The indictment and the jury's verdicts demonstrate that there were no pornographic images that were found to be both received and possessed. Accordingly, the district court did not plainly err in failing to sua sponte dismiss one of the counts. There was no error, much less plain error.

III. **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING CHAT TRANSCRIPTS FROM MANNING'S COMPUTER INTO EVIDENCE WHERE THEY WERE STATEMENTS OF A PARTY-OPPONENT AND HIGHLY RELEVANT TO MANNING'S KNOWING RECEIPT AND POSSESSION OF CHILD PORNOGRAPHIC IMAGES AT ISSUE**.

A. *Standard of Review*

This Court reviews "a district court's evidentiary rulings for abuse of discretion, according substantial deference to the district court's rulings." *United States v. Burrage*, 687 F.3d 1015, 1024 (8th Cir. 2012).

B. *Analysis*

Manning asserts that the district court erroneously admitted the Gigatribe chat evidence related to username "boost_virgin" and the Yahoo! Messenger chat evidence related to username "mem659" found on Manning's computer (Govt's Exhs 52A-P and 53A-D). The content of these chats include identifiers unique to Manning, the trading and downloading of images of child pornography, and sexual

39

interest in children.  Govt's Exhs. 52A-P and 53A-D.[9]

At trial, Manning challenged the admission of the chat transcripts on the theory that they were hearsay.  The district court heard extensive argument related to the admissibility of the chat evidence and overruled Manning's hearsay objection.  TR 310-18.

The chat evidence is not hearsay.  Hearsay is defined as a statement that the declarant does not make while testifying at the trial or hearing and that a party offers in evidence to prove the truth of the matter asserted in the statement.  *See* Fed. R. Evid. 801(c).  However, Federal Rule of Evidence 801(d) defines various types of out-of-court statements that are not hearsay, including an opposing party's statement "made by the party in an individual or representative capacity."  Fed. R. Evid. 801(d)(2)(A).  That is exactly the case here.

To be authenticated as a statement by the defendant, there must be "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  *United States v. Helmel*, 769 F.2d 1306, 1312 (8th

---

[9]While the Government believed this evidence to be intrinsic the crimes charged in the indictments, out of an abundance of caution, it filed a notice pursuant to Fed. R. Evid. 404(b) disclosing its intent to use the chat evidence. The Government prepared and submitted a 404(b) limiting instruction regarding this evidence; however Manning requested that the district court not read the limiting instruction.  Manning preferred no instruction to one that injected the idea of a lesser burden of proof.  TR, 275.  On appeal, Manning does not appear to argue that the chat evidence was not admissible under a 404(b) theory, but asserts that it was inadmissible hearsay that was overly prejudicial.

40

Cir. 1985). "The contents of the document may be considered in establishing authenticity." *Id.* In *United States v. Simpson*, 152 F.3d 1241, 1249-50 (10th Cir. 1998), the Tenth Circuit Court of Appeals upheld the admission of a computer printout of a chat room discussion between the defendant and an undercover officer. Therein, the defendant using the identity "Stavron" provided gave his name as B. Simpson and his correct street address. Additionally, during the chat, the defendant provided an email address which he in fact used. The defense attacked the authenticity of this evidence. In upholding the admission of this evidence, the court concluded there was sufficient evidence to support a finding that it was in fact a chat conducted by the defendant. *Id.* at 1250.

Here, there was even more evidence that Manning is the Gigatribe chat participant using the name "boost_virgin" and the Yahoo! Messenger chat participant using the name "mem659." The chat information was retrieved from Manning's computer which was seized from a residence where he lived alone. Manning admitted that the computer was his and that it was password protected. Manning testified at trial that he employed the username "mem659," the same username used in the Yahoo! Messenger chats. TR 527. Additionally, throughout the various chats, there are multiple cross references to the identity "mem659" and the "boost_virgin" account. For example, in one Yahoo chat, "mem659" admits he collected his pornography collection "[o]ver the years on Giga[tribe], here on

41

Yahoo, and Limewire." TR 367; Govt's Exh 53(a) at p. 8. All of the pornographic evidence exhibited at trial came into Manning's possession from one of these three sources.

The identification of the defendant is further established by the identifying information used in the chats. This includes references to the defendant's height, weight, age, penis size, circumcision status, sexual orientation, marital status, fatherhood status, state of residence, location of residence within the state. TR, 330 ("MO ... 31"); TR, 331 ("Both kids [kidnapped by Michael Devlin] were about 50 miles or less from me."); TR, 332 ("I got two boys... Mine are six and ten."); TR, 336 ("31 bi in MO 5'8" tall 6 ½" cut."); TR, 336 ("Ten and six. Both boys."); TR, 337 ("Bi, single dad."); TR, 345 ("I'm 31 and like trading... Bi on this end."); TR, 354 ("[I'm] bi."); TR, 356 (After sharing a picture of his youngest son, boost_virgin refers to the age of his oldest son when he said "The other one is ten."); TR, 357 (In response to a question of whether he likes young girls or young boys, boost_virgin responds, "Both ... me bi."); TR, 363 ("This is Mike. ... I'm in MO."); TR, 364 ("31 5'9" 200 lbs."); TR, 371 (MEM659 states his age as 31 and location as USA).

The Government sufficiently proved that these chats, found on Manning's password-protected computer in a residence in which he lived alone, were what it purported them to be, namely statements of a party-opponent. Accordingly, these

42

chats were admissible pursuant to Fed. R. Evid. 801(d)(2)(A). *See United States v. Cooke*, 675 F.3d 1153, 1156-57 (8th Cir. 2012). These statements were highly relevant to the issue at trial, namely, Manning's knowledge and intent in receiving and possessing the child pornography found on his computer as well as the Memorex disk.[10] *Id.* at 1157.

Manning also complains that the statements of other participants in the chats were inadmissible because they were hearsay. Manning is wrong. The other chat participant's statements are not hearsay because they were not offered for their truth, but to provide context to Manning's statements. *See Cooke*, 675 F.3d at 1156. In *United States v. Cooke*, this Court upheld the admissibility of a sexually explicit email exchange involving the defendant and an unidentified individual wherein the defendant responded "thats cool that ur young, but I don't want u to narc" to the statement "I am 16 is that okay?" The *Cooke* court concluded that the unknown individual's statement was not hearsay because it was not offered for its truth, but to provide context to the defendant's response. *Cooke*, 675 F.3d at 1156

---

[10]The chat evidence also provided important circumstantial evidence linking Manning to the computer and demonstrating his knowledge of its contents. In *United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010), this Court upheld the district court's admission of similar evidence. In *Koch*, the Government admitted documents which identified the defendant by name and/or nickname found on defendant's computer and flash drive. *Id.* at 479-80. The *Koch* court concluded that it was not an abuse of discretion to overrule the defendant's hearsay objection because they were circumstantial evidence associating the defendant with offending media. *Id.*

43

(citing *United States v. Looking Cloud*, 419 F.3d 781, 787-88 (8th Cir. 2005)).

The Government sufficiently established that Manning participated in the contested chats and therefore his statements therein were not hearsay. The statements of the other chat participants were similarly not hearsay because they were admitted to provide context to Manning's statements. Moreover, the chat evidence was found on the same computer with which he was alleged to have received child pornography. Accordingly, the district court did not abuse its discretion in overruling Manning's hearsay objection to the admission of this evidence.

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING INTO EVIDENCE A MEMOREX DISK WHERE THE GOVERNMENT PROVED THAT IT WAS SEIZED FROM MANNING'S RESIDENCE, KEPT SECURED IN LAW ENFORCEMENT CUSTODY AND WAS NOT CHANGED OR ALTERED.

### A. *Standard of Review*

A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Brumfield*, 686 F.3d 960, 961 (8th Cir. 2012).

### B. *Analysis*

The district court properly admitted the Memorex disk, Government's Exhibit 4 into evidence. Manning unsuccessfully attempts to attack the foundation and chain of custody of the Memorex disk citing inconsistencies in

44

evidence logs. He fails to cite any authority to support his position that the Memorex disk was improperly admitted.

To be admissible as evidence, the chain of custody must reach the threshold of showing a reasonable probability that the evidence has not been altered. *Brumfield*, 686 F.3d at 965. Furthermore, there is a presumption that custodians of evidence have preserved the integrity of that evidence. *Id.* Attacks on the chain of custody, unless they defeat that presumption, only "affect[] the weight of the evidence rather than its admissibility." *Id.*

"The chain of custody does not have to be perfect. All that is required is testimony that the evidence in question was the same as that involved in the offense and that it is substantially unchanged." *United States v. Johnson*, 688 F.3d 494, 505 (8th Cir. 2012).

> Where a physical object is offered as evidence in a criminal prosecution, an adequate foundation for the admission of that object requires testimony first, that such object is the same object which was involved in the alleged incident, and that the condition of that object is substantially unchanged. The district court may admit a piece of physical evidence if it is satisfied that there is a reasonable probability [that] such evidence has not been changed or altered. And, under our precedent, the integrity of such evidence is presumed to be preserved unless there is a showing of bad faith, ill will, or proof that the evidence has been tampered with.

*United States v. Robinson*, 617 F.3d 984, 990 (8th Cir. 2010) (internal quotations and citations omitted).

45

Here, the Government presented evidence that officers recovered from Manning's desk drawer what they initially believed to be two disks in separate clear plastic cases. TR, 75-76. While still at Manning's residence, Det. Corbett packaged the items as evidence, sealed them in an envelope and subsequently put them in his locked office. The envelope remained in a secure location until the FCSO evidence custodian was available and the envelope was subsequently kept in the evidence locker. TR, 115-17.

When Det. Biermann retrieved the sealed evidence from the FCSO evidence locker and took it to RCCEEG for forensic examination, RCCEEG employee Cara Wood unsealed the evidence bag containing the disks. Ms. Wood actually opened the plastic cases and more closely examined the contents. At that time she found that an additional disk, the Memorex disk, was present underneath one of the disks. TR, 150. Det. Grimm subsequently conducted a forensic examination of Memorex disk and found that it contained videos of child pornography. Det. Grimm found no indication whatsoever that any information had been added or changed on the disk after it was seized on September 25, 2010. TR, 450. Moreover, the testimony showed that during the alleged gaps in time periods reflected on the evidence logs, the evidence was either with Franklin County Sheriff's Office or RCCEEG personnel. There was absolutely no showing whatsoever of bad faith, ill will or tampering.

Appellate Case: 13-1016    Page: 56    Date Filed: 05/22/2013 Entry ID: 4038405

In *United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009) (en banc), the defense attacked the chain of custody in a child pornography case. A cell phone containing illegal images was recovered but not turned over to police department evidence custodians for nine days. There was conflicting testimony as to which of two police officers had custody of the phone during that time. *Id.* at 1065. One of the officers was a man, the mother of whose children was dating the defendant at the time. *Id.* at 1063. The defense elicited testimony that this officer had long wanted the defendant to stay away from his children despite their mother's relationship with him. Despite the fact that evidence custodial logs failed to account for the presence of this phone for nine days, and it had been in the possession of someone who allegedly possessed great bias towards the defendant and with a motive to prejudice him, the presumption in favor of the evidence's integrity stood. This Court, sitting en banc, held that "absent a showing of bad faith, ill will, or proof of tampering, the court operates under a presumption of integrity for the physical evidence." *Wilson*, 565 F.3d at 1066.

In the present case, the alleged breaks in the chain of custody come nowhere close to the circumstances in *Wilson*. Here, officers seized two CD cases from Manning's residence and packaged and sealed them. TR, 75-76. They remained in a sealed condition until they were sent to RCCEEG for forensic examination at which time a third disk was located underneath one of the disks. Any

47

inconsistencies on the evidence log forms were proper fodder for cross-examination but in no way reach the threshold to make the disk inadmissible. Manning's arguments affect the weight of the evidence, not its admissibility. The defense was permitted to challenge the evidence at trial and argue the inconsistencies in the evidence logs to the jury.

The district court did not abuse its discretion by admitting the Memorex disk into evidence over Manning's objection. His challenges to the chain of custody were unsupported by any evidence of bad faith, ill will, or proof of evidence tampering.

## V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY IMPOSING A 360-MONTH GUIDELINE SENTENCE WHERE MANNING (1) RECEIVED AND POSSESSED THOUSANDS OF IMAGES OF CHILD PORNOGRAPHY, INCLUDING DEPICTIONS OF INFANTS BEING ANALLY PENETRATED, (2) EXCHANGED AND CHATTED ABOUT THE IMAGES WITH OTHERS AND (3) ENGAGED IN A PATTERN OF SEXUALLY ABUSING HIS OWN CHILD.

### A. *Standard of Review*

This Court reviews the substantive reasonableness of the sentence under a deferential abuse-of-discretion standard. *United States v. Franik*, 687 F.3d 988, 990 (8th Cir. 2012) (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)); *Gall v. United States*, 552 U.S. 38, 41 (2007). "A sentencing court abuses its discretion if it fails to consider a relevant factor that

48

should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Mesteth*, 687 F.3d 1034, 1036 (8th Cir. 2012).

Rarely does a court of appeals reverses a district court's within, above or below-guideline range sentence as substantively unreasonable. *United States v. Shuler*, 598 F.3d 444, 447 (8th Cir. 2010); *Feemster,* 572 F.3d at 464. If the district court imposes a within-Guidelines sentence, this Court "presume[s] the sentence is reasonable, and [the defendant] carries the burden of rebutting this presumption." *United States v. Beasley*, 688 F.3d 523, 535 (8th Cir. 2012).

### B.   *Analysis*

#### 1.  The District Court Considered All Relevant Factors in Arriving at Manning's Reasonable Sentence

The Presentence Investigation Report (PSR) concluded that Manning's total offense level was 43 and his criminal history category was I. Under the sentencing table, the resultant range would be life imprisonment, however, due to the statutory maximum sentences on Counts I and II, the advisory guidelines range became 20 years on Count I and 10 years on Count II. Pursuant to U.S.S.G. § 5G1.2(d), a consecutive sentence on Count II was necessary to achieve the total punishment. PSR, ¶ 69.

49

Manning raised numerous objections to the PSR. DCD 87. Specifically, Manning objected to certain facts included in the report as well as the imposition of increases to the offense level for the following specific offense characteristics: (1) obstruction of justice (U.S.S.G. § 3C1.1, two levels); (2) distribution for the receipt of a thing of value (U.S.S.G. § 2G2.2(b)(3)(B), five levels); and (3) engaging in a pattern of activity involving the sexual abuse of a minor (U.S.S.G. § 2G2.2(b)(5), five levels). DCD 87. Manning's objections to the PSR did not include the attacks on the child pornography guidelines that are raised in the instant appeal.

The Government filed a written response to Manning's objections. At the sentencing hearing, Judge Jackson heard extensive argument on Manning's objections to the PSR. The Government presented testimony and evidence to substantiate the five-level increase in the offense level assessed because Manning engaged in a pattern of activity involving the sexual abuse of a minor. TR, 556-67. Thereafter, with one exception that did not impact the calculation of the total offense level, Judge Jackson overruled the objections. TR, 577, 581, 587. Manning presented letters written by his supporters. TR, 554, 568. Manning and his counsel were afforded a full opportunity at allocution, during which counsel argued that: (1) the recommended guideline sentence was grossly disproportionate to the statutory range (TR, 589); (2) Manning's lack of serious criminal history

50

(TR, 589); (3) Manning had a very supportive family who was present at the hearing (TR, 589); and, (4) it was a "relatively average sort of case for this type of prosecution" (TR, 590). Neither Manning nor his counsel raised any of the facial attacks to the child pornography sentencing guidelines themselves that are raised in his brief. Ultimately, the defense requested a sentence of eight to ten years.

In explaining its sentence, the district court stated:

...I sat through the trial. I listened to the testimony of the witnesses. I also viewed the exhibits, which included some of the images that you possessed and/or received. And these were images that, in some respects or in a number of respects reflected the bondage, the rape, and bestiality being perpetrated on children. Some of whom were under the age of 12.

TR, 597.

...I had not seen images as bad as these were in the 20 plus years that I've been on the bench. And after presiding over numerous trials involving child pornography, this was probably the worst.

Not only that, but we've had discussion about the chats that you participated in, which revealed your strong interest in this kind of material; and this was not just fantasy. The evidence establishes that you took it to the next level; and that you actually engaged in sexual abuse of at least one child. Your own son. So these were very serious crimes. And for people who may have this notion that these are just pictures. They're not. These are real children.

TR, 597-98.

...given the circumstances of those crimes and taking into consideration the seriousness of the offenses; your history and characteristics, which include the acts of sexual abuse of children or of a child that you have actually engaged in; your willingness to share

51

that information with other people and actually revel in it, I believe
that a sentence at the maximum statutory maximum is appropriate;
and that the sentences of imprisonment should run consecutively, so
as to approximate the guideline range in this case.

TR, 598-99.

The instant case involved a defendant who received and possessed

thousands of child pornography videos and images, some of which involved

bestiality, the anal penetration of infants, bondage and rape. Not only did he

receive and possess these images, but Manning traded them with other child

pornography offenders and engaged in chats with these individuals, sharing his

proclivities with others. Manning engaged in a pattern of sexual abuse of his

seven-year-old son and shared that information with others on the Internet. At

trial, he perjured himself, attempting to blame the images and chats on his

computer on someone else. These factors all demonstrate that the guideline

sentence was not unreasonable.

### 2. The District Court Did Not Err By Sentencing Manning Within the Recommended Guideline Range Where Challenge to Lack of Empirical Basis to the Guideline Was Not Brought At Sentencing

Manning argues, for the first time on appeal, that the sentencing guidelines

for child pornography are not based on empirical data and instead reflect

Congress's political judgments; thus, Manning attacks the reasonableness of the

child pornography guidelines themselves. *See* Manning Brief, 54-58. "A

52

presumption of reasonableness will be applied to sentences within the guideline range, even if the sentence is derived from a guideline that was 'the product of congressional direction rather than [an] empirical approach.'" *United States v. Black*, 670 F.3d 877, 882 (8th Cir. 2012) (quoting *United States v. Werlein*, 664 F.3d 1143, 1146 (8th Cir. 2011)); *see also United States v. Coleman*, 635 F.3d 380, 382 (8th Cir. 2011) (rejecting challenge to reasonableness of U.S.S.G. §4B1.2 on the basis that it is product of congressional directive rather than empirical approach).

Manning's newly-raised claim that the child pornography guidelines lack an empirical basis does not demonstrate that the district court's sentence was unreasonable. *See United States v. Regan*, 627 F.3d 1348, 1352 (10th Cir. 2010) (rejecting defendant's argument that child pornography guidelines were entitled to less deference because they are not the result of empirical study when raised by defendant for the first time on appeal). This Court recently rejected a similar argument. *United States v. Hyer*, 498 Fed. Appx. 658, 661 (8th Cir. 2013) (unpublished).

"Assuming that it may disregard the child pornography sentencing guideline on policy ground, a district court is not required to do so." *Black*, 670 F.3d at 882 (citing *United States v. Barron*, 557 F.3d 866, 871 (8th Cir. 2009) and *United States v. Maulding*, 627 F.3d 285 (7th Cir. 2010) (per curium) (holding that a

53

policy disagreement with the child pornography sentencing guidelines does not require a district court to vary downward for a defendant's sentence to be reasonable)). The need to avoid unwarranted sentencing disparities among similar defendants often favors a sentence within the guidelines range. *United States v. Munjak*, 669 F.3d 906, 907-08 (8th Cir. 2012).

In support of his argument, Manning cites *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (holding that there is a disconnect between the requirements of 18 U.S.C. §3553(a) and §2G2.2). Manning Brief, 56. *Dorvee* is distinguishable from the case at hand for two reasons. First, the Eighth Circuit applies a presumption of reasonableness for a sentence that is within-guidelines. *United States v. Beasley*, 688 F.3d 523, 535 (8th Cir. 2012). The Second Circuit does not have such a presumption. *Dorvee*, 616 F.3d at 183. Second, the Second Circuit found Dorvee's sentence to be unreasonable because the district court placed too much emphasis on the likelihood that Dorvee would sexually assault a child when there was no evidence to support such a conclusion. *Id.* at 183. In contrast, as has been shown, the district court in this case considered all relevant factors in determining Manning's within-guideline sentence. The *Dorvee* court criticized the child pornography guidelines and Congress's role in their creation. Other circuits have disagreed with *Dorvee*'s discussion on these Guidelines. *See United States v. Miller*, 665 F.3d 114, 120-21 (5th Cir. 2011) (stating "[o]ur circuit

54

has not followed the course that the Second Circuit has chartered with respect to sentencing Guidelines that are not based on empirical data. Empirically based or not, the Guidelines remain the Guidelines."); *see also United States v. Wayerski*, 624 F.3d 1342, 1354-55 (11th Cir. 2010) (rejecting the argument that the sentencing guidelines are "irrational and not empirically based"); *see also United States v. Mantanes*, 632 F.3d 372, 377 (7th Cir. 2011) (stating "[w]hether one agrees or disagrees with the concerns expressed by the Second Circuit, it is ultimately for Congress and the Commission to consider these concerns").

Manning also cites to Troy Stabenow's article, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (available at http://www.fd.org/odstb_SentencingResource3.htm#DECONS). "Stabenow's article has been gaining traction in the district courts and has been cited numerous times for the proposition that a judge who disagrees generally with the harshness of the child-pornography guidelines may impose a sentence well below the guidelines range for that reason alone." *United States v. Huffstaler*, 571 F.3d 620, 622 (7th Cir. 2009) (per curiam). However, if Manning wanted to bring this argument he should have brought it before the district court. In *United States v. Muhlenbruch*, 682 F.3d 1096, 1102 (8th Cir. 2012), this Court rejected the defendant's argument that the district court abused its discretion because the child

55

pornography guidelines are not based on empirical research. *See also United States v. Shuler*, 598 F.3d 444, 448 (8th Cir. 2010) (emphasizing that the court's "appellate role is limited to determining the substantive reasonableness of a specific sentence where the advisory guidelines range was determined in accordance with §2G2.2"); *United States v. Osei*, 679 F.3d 742, 748 (8th Cir. 2012) (defendant cannot argue on appeal that the district court was unreasonable for not considering unwarranted disparities with co-defendants when it was not raised in the district court).

Manning failed to raise attacks on the guidelines themselves in the district court. Judge Jackson carefully considered the factors of §3553(a) when fashioning her sentence. There is a presumption of reasonableness for a within guidelines sentence, and Manning has not rebutted this presumption. The sentence imposed was reasonable.

Appellate Case: 13-1016    Page: 66    Date Filed: 05/22/2013 Entry ID: 4038405

## **CONCLUSION**

For all the foregoing reasons, defendant Michael Manning's arguments regarding his conviction and sentence should be rejected and this Court should affirm the convictions and the sentences on both Counts.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*s/Tiffany Gulley Becker*
TIFFANY GULLEY BECKER, #46314 MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, Missouri  63102
(314) 539-7653
Counsel for Appellee
United States of America

May  21 , 2013.

57

# **CERTIFICATE OF COMPLIANCE**

COMES NOW counsel for Appellee and certifies the following:

1.     The Brief of Appellee complies with the word limitations set forth within Fed.R.App.P. 32(a)(7)(A), (B) and (C).  The undersigned hereby certifies pursuant to Rule 32(a)(C)(7) that this Brief is in monospaced type and contains <u>13, 070</u> words.

2.     Pursuant to Eighth Circuit Rule 28A(c) that this Brief was prepared using Corel WordPerfect 12 software.


<u>*s/Tiffany Gulley Becker*                    </u>
TIFFANY GULLEY BECKER, #46314 MO
Assistant United States Attorney

Appellate Case: 13-1016     Page: 68     Date Filed: 05/22/2013 Entry ID: 4038405

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on <u>May 21, 2013</u>, the foregoing

Appellee Brief for United States v. Michael Manning, No. 13-1016, was filed

electronically with the Clerk of the Court for the United States Court of Appeals

for the Eighth Circuit by using the CM/ECF. Participants in the case who are

registered CM.ECF users, including Kenneth Schwartz, will be served by the

CM.ECF system.


<u>*s/Tiffany Gulley Becker*</u>
TIFFANY GULLEY BECKER, #46314 MO
Assistant United States Attorney